Epping vs. Aiken.

## EPPING vs. AIKEN.

1. Where a bill in equity was brought against a firm, and after decree against them, a bill of exceptions was taken in the name of one of the members, it could be amended in this court, from the record, by adding as a plaintiff in error another member of the firm, who was a party defendant in the court below.

2. Where a bill in equity was brought against a partnership consisting of several members, one of them who was not served was not a party to the suit, except in so far as partnership property was concerned, which could be bound by serving either of the other partners. He need not, therefore, be made a party plaintiff in error, but the case may proceed without him.

3. A bill was brought to enforce an account and settlement under the following memorandum of agreement: "I. M. Aiken to receive $4.00 per day for his individual and constant attention to the interests of the Herd's Island mill, in each and every way, particularly, as far as the supply of timber from our booms, the manufacture and shipment of lumber, etc., is concerned, and at the end of the year, say on the 31st day of October, 1873, fifteen per centum of the net profits of the mill to be due and payable to the order of Mrs. I. M. Aiken, in consideration for personalties, etc., in the said mill." By amendment, it was alleged that the real beneficial interest in the fifteen per cent was in the husband, and was so known to be by the defendants, though made payable to the wife's order, and that she had assigned and transferred to him whatever interest she had. It was also alleged that defendant used $800.00 of complainant's money in the mill business:

*Held*, that there was equity in the bill. This was such a partnership transaction as to give equity concurrent jurisdiction over matters of account growing out of it; and besides, the accounts were necessarily complicated and protracted, and a court of equity could better adjudicate the question than a court of law.

(*a.*) If the wife was a necessary party, she could have been made so, if a special demurrer had been filed on that ground; but the allegations of the amendment showed an equity in the husband.

4. Equity, having secured jurisdiction of the parties and the subject-matter, will settle at once all conflicting claims of the partners in the venture, which are connected therewith or equitably bearing upon a just account. Therefore, having jurisdiction to enforce a settlement of net profits due by some of the parties to another, it will also enforce a settlement as to money used by the former in the business and belonging to the latter.

5. Where, in 1870, one member of a firm held a claim against the complainant, and by agreement, the mill then owned by the complainant, and afterwards conducted by the partnership, was sold

under a claim against the complainant, and bought by the individual member of the firm, who applied to the payment of his claim the purchase price in excess of what was necessary to settle the *fi. fa.* in the hands of the sheriff; and in 1877, the title so acquired failed on account of a mortgage executed in 1866:

*Held,* that in 1878 such individual member of the firm could not set up, by cross-bill to a bill brought by complainant against the firm, such claim as an equitable set-off. The demand was stale, and *laches* concerning it appeared.

(*a.*) Could such individual member of the firm have an equitable set-off against the complainant in the bill brought against the firm? *Quære.*

6. There was no error as to the rulings on the facts.

January 8, 1884.

Practice in Supreme Court. Amendment. Equity. Partnership. Contracts. Before Judge ADAMS. McIntosh Superior Court. November Term, 1882.

Reported in the decision.

W. S. BASINGER, for plaintiff in error.

LESTER & RAVENEL, for defendant.

JACKSON, Chief Justice.

The bill which resulted in the controversy made by this record was filed in the superior court of McIntosh county, by Isaac M. Aiken against Epping, Bellas & Co. and Nelson Staples, to recover an amount alleged to be due from the defendants on a memorandum (set out hereafter) in regard to working a mill, known as the Herd's Island mill. A demurrer to this bill was overruled; certain matters of account were referred to an auditor or master; exceptions were taken to his report; and on them the cause was finally heard before Judge Adams, by consent of parties, as judge and jury, on law and facts. His final conclusion and decree in favor of complainant, as well as the judgment of his predecessor on the demurrer, and certain

v 71–44

alleged errors of law on the hearing, are excepted to and these make the case now to be reviewed.

1. As the bill of exceptions was first brought, it was in the name alone of Epping, but leave was given to amend it, at the instance of plaintiff in error, so as to join Baars, another of the firm of Epping, Bellas & Co., as co-plaintiff in error, the record showing that he was a party below, having appeared and pleaded to the bill, and therefore the bill of exceptions could lawfully be amended by this record.   Code, §§4288, 4272 (b).

2. A motion was then made to dismiss the writ of error because Bellas, the remaining member of the firm, was not joined as plaintiff in error ; but as he was not served as a defendant to the bill, and did not appear and plead, and was thus no party to the case tried below, except in so far as partnership property was concerned, which could be bound by serving either of the other partners, the court is of opinion that he need not be made a party plaintiff in error, even if this court had power to make him so, not being one below; and it is our judgment that the case may proceed in his absence as well in this court as it did in the superior court, and the motion to dismiss the writ of error is overruled.   The truth is, that it is only a party to the case below who can bring the case here.   Code, §4251. Therefore, one not a party there cannot be made one in this court.

3. The memorandum on which the alleged equity of complainant's bill rests is in the following words :

"I. M. Aiken to receive $4.00 per day for his individual and constant attention to the interests of the Herd's Island Mill, in each and every way, particularly as far as the supply of timber from our booms, the manufacture and shipment of lumber, etc., is concerned, and at the end of the year, say on the 31st day of October, 1873, fifteen per centum of the net profits of the mill to be due and payable to the order of Mrs. I. M. Aiken, in consideration for personalties, etc., in the said mill.

"Epping, Bellas & Co. to give their attention to the best interests of the Herd's Island Mill in each and every way, particularly as far as the purchase of timber for the mill, the selling of lumber, etc., is concerned, and to furnish sufficient means to carry on the business

of the said mill; for which they shall be entitled to eighty (80) per centum of the net profits of said mill.

"Nelson Staples to receive five (5) per centum of the net profits.

"December 3, 1872.                              E., B. & Co."

The demurrer is upon the grounds that it appeared by the bill and this exhibit that the right was in the wife of complainant, and not in himself, so far as the recovery of fifteen per cent of net profits was asked; and so far as another demand for eight hundred dollars, which defendants used of complainant's money in and about the business of the mill, that the remedy at law was complete; that the bill was multifarious, and as a whole was destitute of equity.

It was overruled on all the grounds except that in respect to the wife's interest, and leave was given to amend in that respect. The bill was then amended to the effect that the real beneficial interest in the fifteen per cent was the husband's, which was well known to defendants; and besides, that while the fifteen per cent profits were made payable to her order, yet the beneficial interest was in him, and she had assigned and transferred whatever right she had to complainant, and directed defendants to pay to him.

Thereupon the demurrer was overruled, and the bill retained.

We think that there is equity in the bill as amended. If defendants agreed with complainant as set forth, and they engaged in the business alleged, for which he was to receive, though payable to his wife's order, 15 per cent of the net profits of that business for his work therein, and the personalties alluded to in the contract, and the wife directed payment to him, it was right that they should settle with him, if net profits were made. The amendment was properly allowed. The paper is a memorandum merely, signed only by the defendants. It did not purport to be the entire contract. Therefore, parol evidence was admissible to explain it, and show the whole arrangement and the real interest of all parties. The only question is, in

what court, and by what remedy, should the settlement be adjudicated ; for wherever there is a right there must be a remedy, and some court must have power to give it, if necessary, even to frame it.   Code, §§2243, 3250 ; 4 *Ga.*, 264; 45 *Ib.*, 551 ; 49 *Ib.*, 466 ; 56 *Ib.*, 330 ; 59 *Ib.*, 288.

.   Which is the court having jurisdiction in a transaction of this sort to settle accounts between partners to the extent these persons are, and to ascertain what is the net profit made in the business, and thus to determine how much 15 per cent thereof will amount to in dollars and cents ?   Our own Code settles the question.   "Equity jurisdiction over matters of account extends to mutual accounts growing out of privity of contract, or where accounts are complicated and intricate   *   *   *   or accounts between partners and tenants in common, or where a multiplicity of suits would render a trial difficult, expensive and unsatisfactory at law."   Code, §3130 ;   54 *Ga.*, 488;   Code, §§1887, 1888. We are quite clear that the Code, above cited, makes this such a partnership transaction as to give equity concurrent jurisdiction ; that they are bound to account *inter sese* for the net profits of the venture, and that the bill was not demurrable on the ground of want of equity, even if the jurisdiction rested only on the partnership nature of the transaction.    But the accounts were necessarily complicated and intricate, the transaction protracted making them more so ; there were mutual dealings and privity of contract, and equity could better adjudicate the questions than law.   Indeed the master had further time granted, so complicated were the accounts.    See generally on the subject 1 *Ga.*, 376 ; 5 *Ib.*, 22 ; 9 *Ib.*, 449, and following cases.

There was no demurrer on the ground that the wife was not a party.    If there had been a special demurrer to that effect, she could have been made a party; but even had that been a special ground of demurrer, we do not see the necessity of it, if her husband had all the beneficial interest originally, or if she had parted with it

all to him, or if she had ordered the money paid to him. But no such point was made, as it should have been, on special demurrer; and that makes it improper for us to rule the necessity of it had it been made, inasmuch as it could have been cured, and doubtless would have been, if made.

The bill, as a whole, was good on this point, because she did order it paid to her husband by the allegation in the amendment, and that, in equity, would enable him to recover it, if he had the real beneficial interest, and she consented. The paper does not set out that the order must be in writing. · Nor do we regard it such a chose in action as should be in writing, but a mere memorandum of the mode of payment to him through her order, in view of the pecuniary troubles which seem, from the record, to have embarrassed him.

4. If entitled to go into equity to recover the 15 per cent of net profits, the complainant had the right to recover in the same equitable proceeding, all other moneys owing to him, growing out of the same business and germane thereto. Within this rule, we think that any money of his, used by the firm in the business, is recoverable in this suit. Equity does nothing by halves, but having secured jurisdiction of the parties and the subject-matter, and seeing no advantage, but much cost and expense, in a multitude of suits, she will settle at once all conflicting claims of the partners in this venture, which are connected with the venture, or equitably bearing upon a just accounting. Code, §3085, and cases there cited.

Therefore, the claim for eight hundred dollars due for money used in the business could be adjudicated in this bill, and a prayer for it did not make the bill multifarious, or otherwise inequitable.

5. The amended answer of defendant, Epping, by way of cross-bill, it is presumed, undertook to set off a claim by Epping upon Aiken for a debt the latter owed to the former in 1870, for advances before that time, made in respect to

the running of this mill by Aiken, which account was in that year paid by the sale of the mill as Aiken's property, under a lien of one Strickland thereon. Epping bought the mill, paid the sheriff money enough to extinguish Strickland's debt and costs, and the sheriff did not require the balance to be paid to him in order to be turned over to Aiken, but, by consent, it went to the extinguishment of this account due Epping by Aiken. Afterwards, the title of Epping thereto failed in 1877, by a decree in the circuit court of the United States, which subjected it to a prior lien, it being a mortgage on the mill as the property of Aiken and Goodrich, then owning the mill, executed in 1866; and as the title failed, it is alleged that the debt is still owing, and equity will set it off, especially as it is alleged that Aiken is insolvent, and that the debt would now be barred in law by the statute of limitations, and that his copartners, Bellas and Baars, live out of the state, and that Aiken has secured whatever decree he may get, by bond, under legal process, from him individually. The court struck this cross-bill, or answer, setting up the set-off, and Epping excepted.

It is doubtful, to say the least, whether there be equity in this amended answer. It was no transaction between Aiken and the firm of Epping, Bellas & Co., but the individual trade between Epping and Aiken, about an individual debt between them. There is no allegation of fraud against Aiken, or that the mistake was brought about by any misrepresentation of his. The suit in the United States court was to foreclose a mortgage; that mortgage must have been of record and notice to all the world. Equity is slow to open a matter stale merely for old age, but *laches* in not looking on the record to see prior liens when one purchases at sheriff's sale would seem to be an insuperable bar. Equity usually follows the law, and will apply the bar of the statute, or the same time prescribed therein to the issues before it that a court of law would apply under the terms of the statute. There is no

allegation that no partnership effects sufficient to pay a decree are within the jurisdiction of the court in this state, and for these reasons we think that the court below hardly erred in dismissing the cross-bill.

But, be that as it may, taking in view the whole record, it seems to us clear that Epping, having the mill in use from the purchase in 1870, up to the surrender of it under the decree in 1877, over seven years, must have made enough out of it to have paid Aiken's debt. The rent of the mill seems to have been over $150.00 per month—over twelve thousand dollars in seven years— enough, in all good conscience and equity, to pay a stale demand of uncertain equity for less than five thousand dollars. The defendant was not hurt by having the amended answer stricken.

6. The other points are all issues of fact. The judge tried them, by consent, as a jury. The master passed upon them before. The plaintiff in error has not made it plain that they erred. The main point relied on is the refusal to allow Epping the rent of the mill during the months this partnership operated it. It seems to us that it should have been denied him as against all engaged in this venture, except the other partners composing the firm of Epping, Bellas & Co. That firm owed it to Epping, acknowledged it due, and will doubtless pay it, or ought to do so.

Judgment affirmed.